Case number 17-7023 David Schermerhorn et al. Appellants v. State of Israel et al. Mr. Schneebaum for the appellants, Mr. Bellinger for the appellees. Good morning. Good morning, Your Honor. Good morning, and may it please the Court. The district court below addressed two issues of first impression in this case. She concluded that Israel is entitled to immunity for an assault committed on board a U.S.-flagged vessel on the high seas in 2010 because that event, the Court concluded, did not take place in the United States. And second, she imposed the requirement, not part of the statutory basis, that a state be listed by the State Department as a state sponsor of terrorism in order to lose its immunity under the Foreign Sovereign Immunities Act. And I will address those two, if I may, in turn. First, the so-called noncommercial tort exception. The Foreign Sovereign Immunities Act provides that sovereigns are not entitled to immunity for torts committed in the United States. And for many reasons, in many contexts, and in many decisions, courts of this country have held that American ships on the high seas are within the United States. Right, but those aren't FSIA cases. None is an FSIA case, Your Honor. Okay, and we're interpreting the FSIA in this case. You are interpreting the FSIA. And the FSIA case defines the United States, right, as all territories of war, as continental or insular. So you have to work with that definition. That is the starting point. Those other cases have nothing to do with this case. That is the starting point, Your Honor, of course. Well, it's also the ending point. We're interpreting this statute, right? Yes. The reason we submit with respect that it is not the end point of the analysis is that the definition of the United States provided in Section 1603C is that the United States, that term, includes, not means, the territory, continental and insular, and the territorial water. And we submit that when Congress uses the word includes, it means not to limit the definition to the listed items, but rather to suggest that others might be included that share essential characteristics with those listed items. And our submission is that ships on the high seas. What do you do with our decision in Persinger? In Persinger, Your Honor, is a case involving the United States Embassy. Yeah, I know what it's about. Embassies are not, we submit. But it says, the Court says, we said in it, the modifying phrase is rather clearly intended to restrict the definition of the United States. Restrict the definition of the United States. To the United States and such islands, there is part of it. And then it goes on to say, you know, that if it was broader, it would be completely, there would be no limits to it. The Persinger case and the McKeel case in the Ninth Circuit concluded correctly that embassies are not parts of the territory of the sending states. And, in fact, the Vienna Convention on Diplomatic Relations provides for that. But that case, of course, those cases did not address the situation before Your Honors. It did not address the question of vessels, American flagged vessels on the high seas. The holding of that case was that embassies are not within the United States for purposes of Section 1605A5, and we take no exception to that. Was there anything in Persinger that indicated that it turned on the fact that it, that, was there anything in Persinger that indicated that the embassy was in a different country? And not on, right? Well, I believe the decision in Persinger concluded that the embassy of the United States in Tehran was in Iran. It was not in the United States. And our submission is, again, that that is all that the court held in Persinger and in the Ninth Circuit decision. The courts in those cases did not consider the situation. But is it really Persinger, just what the court is talking about in Persinger again and again, are these words continental or insular? Indeed. That's what it's focusing on, and it says that Congress had in mind a geographic limitation. Indeed. It seems to me to eliminate a ship. The court did, of course, rely on that language. Our submission is that the definition of the United States provided in this statute uses the word includes and not means. I understand. I understand your argument. And the case law, including the Supreme Court precedents that we cited in our brief, suggests that that use of language is deliberate, and especially when, as here, some terms are defined by what they mean and others defined by what they include. Had Congress intended to limit the definition of the United States to the territory continental and insular and territorial waters, it knew how to say that. But it didn't say that. It said instead that the definition includes those areas and suggests that the common thread connecting those areas and connecting U.S.-flagged ships is that over those places, American jurisdiction is exclusive and plenary. That is true of ships sailing on the high seas, and, indeed, the Supreme Court has said that on any number of occasions. But you would agree that if we don't accept your reading – well, let me just ask you this. Do you agree that if we don't accept your reading of includes, if we think that the language of the statute combined with Persinger suggests that this is geographic, that this clause doesn't help you? I'm sorry. That this clause is dispositive, that there's no – that the Israels protect them under this clause, that it's a noncommercial tort exception. In other words, your whole argument depends on the word include. Our argument depends on the word include. And we would direct and respect the Court's attention to such cases as Helvarin v. Morgans, in which the Supreme Court elaborated on the proper construction of the word includes as contrasted with the word means, and pointed in that very case to the fact that the statute before the Court included both kinds of definitions. And that is what we have here. So what do you do with the distinction between prescriptive and adjudicative jurisdictions? Our submission is that the jurisdiction of the United States to prescribe reaches U.S.-flagged ships wherever – whenever they are on the high seas. I understand. But even the Supreme Court seemed to recognize that the sailor on the ship might not have all the rights. So that distinction, it seems to me, I don't know, addresses or places in context which definition of includes the Court should adopt. In that context of the case in which Your Honor refers, cases that – cases, really, that talk about the rights of seamen on ships, the question of whether a baby born on an American ship is a natural-born citizen of the United States, those cases determine that for some purposes it would simply make no sense for the term the United States to be understood otherwise than geographically. But in those statutes, Congress did not provide the definition, the operative definition that courts were meant to interpret in applying the statute to facts before them. Here, Congress did do that and, again, stated the definition in terms of what term includes rather than means. So we would hold that – we would urge the Court to conclude that Persinger and the other cases involving embassies, McKeel, for example, are distinguishable on that basis because U.S. jurisdiction over embassies is not plenary and exclusive. The Court below relied also on Smith v. Libya involving an aircraft over which U.S. jurisdiction was not plenary and exclusive, but here it is. It was plenary and exclusive over the Challenger 1 when it was sailing in the international portion of the Mediterranean Sea where these torts occurred, and, therefore, we submit that the government of Israel is not entitled to immunity on that basis. Now, in addition, of course – Can I ask you to go on to the other – unless my colleagues have questions on that subject – could you go on to the state sponsor of terrorism exception? Again, I'm sorry. I'm sorry. Let me move this here. How's that? That's better. Thank you. Could you go on to the state sponsor of terrorism exception? Go on to that one. Yes, I was about to do that. Thank you, Your Honor. Okay. So the state sponsor of terrorism issue – I'll just tell you right now my question about it. I think your reading of this revision is quite creative, actually, and the statute's pretty mysterious given the way Congress amended it, but I have two big problems with your interpretation. If you're right, what this statute now means is that when Congress rewrote it, it eliminated two major provisions of the Foreign Sovereign Immunity Act that used to be there. In other words, under the previous act, it had to be a listed state sponsor of terror, right? Yes, correct. And the plaintiff had to be a national of the United States. Correct, yes. But under your view, both of those are gone. That is correct. But is there any indication at all – do you know of any indication at all that that's what Congress had in mind here? We do have some indications, Your Honor. Because that's a pretty dramatic change for Congress to implement by switching from a statute that rested on a double negative to a statute that was written in the affirmative. Congress did a little bit more than that. Yeah. Congress indicated that what it was attempting to do in the 2008 amendments to the Foreign Sovereign Immunity Act was to make it more – make courts more available to victims of acts of terrorism wherever they occur around the globe. And it indicated that intent in ways other than or in addition to the removal, the repeal of the provision that required that states be on the state-sponsored list. It did it, for example, by changing the caption of the section. And captions are guides to statutory interpretation. It used to say, jurisdiction for lawsuits against terrorist states. Against states. It doesn't say that anymore. Now it says, terrorism exception to immunity, shifting the focus from the identity of the defendant to the nature of the act. And similarly, the caption of Section 1605AA1, also Congress drafted the language to read, no immunity. And the statute says specifically that states are not – do not deserve, do not get, do not warrant immunity in situations in which they are involved in acts defined by U.S. law as terrorism. Before 2008, there is no question that we would not be – I would not be standing at this lectern. But since 2008, when the law changed and Congress repealed the requirement – Is there anything in the legislative history – I mean, I know we have to be careful about legislators. But is there anything which says, you know, we really want to eliminate this requirement for the state having to be on the list of state sponsors of terrorism? And we also don't want to restrict this any longer to U.S. nationals. There is nothing that we have been able to find in the legislative history that discusses this either way. But again, the language that Congress chose here is as clear as could be. No immunity. I wouldn't go that far. I don't think you can say the statute is as clear as can be. I think you've clearly identified an ambiguity in this thing. But it's hard to say it's, quote, clear as can be, given the dramatic change that it brought about and the absence of any evidence that that's what Congress expected. The statute says a foreign state shall not be immune from the jurisdiction of courts of the United States in certain instances. A state is not immune. Now, to contend at this stage that Congress perhaps meant something else or intended something else is – we submit a stretch in the process of judicial interpretation. Now, I get your argument. That's why I started out by telling you. I thought it's very creative. Let me ask you my other question. So your theory is then that under the first clause, the no immunity clause, which is where you say your case comes, right? Yes. Jurisdiction is not – the district court doesn't have to hear the case, right? That is correct. The district court may entertain defenses that the state of Israel and its agencies might raise in this case. How would the district court decide whether it's going to exercise jurisdiction under this provision? What are the standards it's going to use? We submit that the district court can and should apply the traditional legal analysis to whatever defenses Israel might raise. But that's true under the second clause, too. All those defenses would be for a listed sponsor, like for a listed sponsor, all those defenses would still be available. The statute says that with respect to listed states, the court shall hear each case. No, but I'm trying to understand what – other than all – it seems to me the defenses, once you're passed, being on a list and whether or not the plaintiff has to be a U.S. national, the defenses in either case will be – beyond that will be the same that the country could offer. So what – how does a district judge decide whether it's going to allow a case to go forward under the in general clause? How will it distinguish between two different cases? Suppose it just has two cases before it. They're both against states that are not listed. How will it decide which one goes forward and which one doesn't? How will it decide which one to dismiss for lack of jurisdiction? Because you acknowledge that it could, right? Yes. So how will it decide that? The decision would be made, we submit, on the basis of the objections that the defendant state raises. No, it's just a jurisdictional question. The only question is jurisdiction. Does the court have jurisdiction over a terrorism case against a country that is not on the list? Yes. Now, how will it decide whether to exercise – whether to grant the motion to dismiss or to deny it and let the case go on to other defenses? Let me answer the question as Your Honor asked it in two parts. First, yes, there is jurisdiction over the defendant in such cases. Under 1605 big A, A1, the foreign state is not entitled to immunity. So the answer to the jurisdiction question is absolutely yes. What are the factors that might cause a trial court not to exercise that jurisdiction? Numerous ones. There could be an active state defense. There could be a foreign nonconvenience defense. There could be a political question defense, in theory at least. So there are ways in which courts can control their doctrines. Those are all true. Those are all available to a defendant that's on the list. I'm sorry, again. Those are all available to a defendant that's on the list. They are all there in any event, of course. But the statute guidance provides that the court shall hear cases against state sponsors. Your Honors, I see that not only is my primary time elapsed, but my rebuttal time is, too. That's fine. Thank you. I'm done. Counsel Farratt, please. Good morning, Your Honors, and may it please the Court. I'm John Belanger, Counsel for the State of Israel and its Ministries. The appellants argue in this case that this is a case of first impression. However, the facts may be new, but the legal arguments are not. They have been considered and rejected by the Supreme Court, this circuit, and by all other courts that have considered them. As the appellants concede, Israel and its ministries have immunity under the Foreign Sovereign Immunities Act, but they argue that two exceptions apply, the noncommercial tort exception and the terrorism exception. Judge Jackson rejected both arguments, as did the U.S. government, in a statement of interest that it filed in the district court. Judge Jackson was correct, as was the U.S. government, that this suit must be dismissed for lack of jurisdiction. Let me address each of these exceptions. The noncommercial tort exception says that a foreign government does not have immunity for tortious acts in the United States. Judge Tatel, you read the relevant language. The United States is defined to include territory and waters, continental or insular, subject to the jurisdiction of the United States. You discussed the Persinger case, which I'll come to, but the starting point really is the Amirata Hess case. Well, what about his focus on the word include? It doesn't say meaning. It says includes, which means there could be others. The includes can be a term of enlargement in some statutes, but here we have guidance both from the Supreme Court and this Court in the Persinger case, and I want to read the relevant language from the Amirata Hess case where the Supreme Court construed this particular language. The Supreme Court said in Amirata Hess, quote, we construe the modifying phrase continental and insular to restrict the definition of United States to the continental United States and those islands that are part of the United States. That was not limited to the facts of the case. That was a conclusion of law, and Judge Tatel, as you correctly pointed out, this circuit reached the same decision in Persinger. Also, the appellants have argued that in trying to determine what includes means, while it can be a term of enlargement that has to be known by the company it keeps, and certainly a ship bears nothing in common with territory and water. So in this case, both the Amirata Hess case and this Court's decision in Persinger clearly limit the words territory and waters to the geographic United States, and to rule for the appellants, this Court would have to conclude that both the Supreme Court in Amirata Hess and the circuit in Persinger were wrong. The appellants continually tried to ignore the words continental and insular and instead to focus on the breadth of Congress's ability to exercise jurisdiction, and Judge Rogers, that was your point about confusing prescriptive jurisdiction with adjudicative jurisdiction. Of course, Congress does have broad power, but the question is, did they try in this case to remove the immunity of foreign governments, and there's nothing that indicates that they did so. In Persinger, this case said that the issue was not the raw power of Congress to exercise jurisdiction, but a question of intent in the Foreign Sovereign Immunities Act, and there's nothing that indicates that Congress tried to exercise jurisdiction outside the United States. Again, in Persinger, the Court said very well that there would be unhappy policy consequences to take a broader view, and indeed, in this case, if you were to accept appellants' arguments, the jurisdiction over foreign governments would be removed not only over 40,000 U.S.-flagged vessels around the world, but up to 15 million pleasure craft registered in the different states, as it appears that the vessel in this case was. That would be an enormous expansion of U.S. jurisdiction, and we would not be simply removing the jurisdiction over or removing the immunity of Israel, but of every country in the world with respect to those 40,000 to 15 million pleasure craft. So the immunity of other close allies like the United Kingdom or Australia would be removed. If the British Navy attempted to rescue some U.S. nationals or British nationals on a ship off of Somalia and something went wrong, the immunity of the British Navy would be removed. Again, in Persinger, I thought you said it very well that the possibilities are almost endless for tort actions against foreign governments for acts and emissions. We also have to think about reciprocity. If this court were to decide to remove the immunity of foreign governments, it would be very difficult for the executive branch then to complain if other countries removed the immunity of the U.S. government, the Navy, and the Coast Guard off of our vessels. And then finally, there's really nothing in the legislative history that suggests that Congress was focused on anything other than traffic accidents inside the United States. Let me turn to the plaintiff's creative argument. As you said, Judge Tatel. It's pretty creative, isn't it? Sorry? It's pretty creative. I mean, if you just look at the language of the statute, just the plain language, the plain text of it, you know, this first section, it establishes a set of conditions under which they're not immune, and being on the list isn't one of them. It is creative, Your Honor. So what? But every other court that has considered this has. Yeah, I know that. But none of them are binding on us at this point, right? Well, the D.C. Circuit has said both in the Weinstein and the Mahomedy case that the 1605A was materially similar to 1605A7. I know, but that really wasn't a holding. But actually, I think you put your finger on it, Judge Tatel, is if you were to accept appellant's argument and say that the only relevant part of 1605 was A1, which removes the immunity of foreign governments, and the restrictions in A2 don't apply, then it's not simply that you don't have to be a state sponsor of terrorism, but that you don't even have to be an American or a member of the armed services. The implication of this, and you were heading there, I think, Judge Tatel, was that courts in the United States would have jurisdiction to hear any claim by any foreign national against any foreign government in the world for any extrajudicial killing. So, for example, if a foreign national is concerned that someone has been killed in Iraq or Afghanistan by the British, that would be an extrajudicial killing, and this court would have jurisdiction. They wouldn't have to hear it, but they could hear it. There's nothing that suggests that Congress intended that. So do you have any idea why? I asked counsel for a point of whether he knew whether there was any indication of what Congress intended here. Do you know why did Congress switch from this double negative in the old version to speaking positively in the new version? Do we know why this change was made? In general, the purpose of 1605 overall was to remove some impediments that plaintiffs had had in previous cases against Iran and others, and there's nothing to indicate that Congress wanted to broaden this enormously. Did abandoning the double negative solve that problem? I was asking about that in particular. What led Congress to make this odd change that created this? Your Honor, my guess is that this was simply a matter of legislative drafting where they tried to break it out into two sections with a preambular part about removal of immunity and then that A2 were the conditions that really needed to be read together with A1. So your point, your bottom line then, I think it is that, yes, you know, this statutory language could be read, if you just looked at that, it could be read the way the plaintiffs want, but that that would produce such a dramatic change in the way this has been interpreted before, and there's no evidence that Congress intended that, right? Is that your bottom line? That's right, although I think it really would be a stretch to read it that way because A1 and A2 have to be read together. As the Supreme Court has said and other courts have said, we don't interpret simply provisions. We have to interpret the entire statutory framework. Well, but their point is that the two provisions, yeah, you interpret them both,  They're not eliminating any of them. They're not ignoring them. They are interpreting them both. The question is what do they mean? Well, I would say while certainly not binding on you, I think instructive was the Eastern District of New York's decision in the Carpenter case, which did quite specifically address this argument and said that that was a case against Chile in which the plaintiffs tried to argue that Chile could then be sued under the new 1605A, under this theory, and the Eastern District of New York said while theoretically possible, it would produce utterly absurd results and then went on to discuss the policy consequences that Afghans, that the U.K. and Australia could be sued in Afghanistan and Iraq. The Second Circuit then affirmed on that ground. So, again, I think we have to look both at the fact that in the 10 years that this change has been on the books, no court has accepted this argument. The policy consequences would be dramatic. It's hard to imagine that Congress intended that every country in the world, not just Israel, but every other country could be sued in federal court for not only alleged acts of terrorism, but for extrajudicial killings. And then we have to also consider the reciprocal concerns that if this court were to lift the, read the terrorism exception to apply to all governments, then it would be difficult for the executive branch to complain if other governments were to remove the immunity of the United States for acts of terrorism or alleged extrajudicial killings. So the policy consequences would be very broad. And then once again on the legislative history, while there's not much there, it is hard to imagine that Congress would have made this dramatic change without any suggestion in the record. As Judge Scalia said, Justice Scalia said, Congress does not hide elephants in mouse holes. And then finally, I think it's also worth looking at the Justice Against Sponsors of Terrorism Act, which Congress passed last year over great controversy to remove the immunity of Saudi Arabia and other countries for acts of terrorism. If Saudi Arabia had been not immune previously under the terrorism exception, it's hard to see why Congress would have gone to all the trouble of passing JASTA and the president having vetoed it. So again, it's the terrorism exception. I think it's hard to see that Congress intended it to apply to anything other than state sponsors. Although Judge Jackson did not address the issues, we think this case would also be barred by the political question and act of state doctrines. There are no judicially manageable standards. We don't have to reach that, though, if we agree on the statute. I agree. In that case, we believe that Judge Jackson and the U.S. government were correct in rejecting the appellant's arguments. The court should not adjudicate Israel's military actions, nor should it expand the exception or the terrorism exception to lift the immunity not only of Israel, but of all other states without some showing of congressional intent. The district court should be affirmed. Thank you. Thank you. Counsel for appellants? Thank you, Your Honors. Let me make three points quickly, if I may. Mr. Bellinger suggests that the includes and means conundrum can be resolved by the fact that, he said, territory and ships have nothing in common. We submit that they have something very critical in common. They have in common the critical notion that U.S. territory, continental and insular, U.S. territorial waters, and ships on the high seas are subject to the exclusive and plenary jurisdiction of the United States. Not many other places are, but they are. That's the first point. You could read his comments in the context of fixity. I'm sorry. Well, sorry. I understand. It was a very broad statement. Perhaps Congress could have done this differently. But, again, we submit that the task at hand is not to rewrite the statute, but to interpret it. Second, the purpose of the Foreign Sovereign Immunities Act is to transfer authority away from the executive branch to the judiciary to make decisions about immunity. And our reading of both of the exceptions is consistent with that interpretation. What do you think about Mr. Bellinger's hypothetical that under your interpretation of the terrorism exception, a British citizen subject to state terrorism in Iraq could sue in the district court here? Our submission is that Congress— You agree he could under your theory, right? Congress opened the door to that kind of suit. And if Congress opened it and it needs to be closed, it should be Congress that closes it. Congress said no foreign state is immune from jurisdiction. That's true, but we need some evidence that Congress opened the door. Congress opened the door. That's the first question. In 1605 A.1, A.A.1, as we submitted. By taking away any claim to immunity on behalf of a foreign state accused of these listed acts. By the way, I'm not sure about this, but your complaint is filed only on behalf of U.S. nationals, right? No. We have among our four plaintiffs, three are U.S. nationals and one is not. Okay, thanks. Okay. Thank you. I'm sorry. We'll take a case under advisement. Thank you.
judges: Rogers, Tatel, Edwards